**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **EDWIN PHELPS,** | ) | **CASE NO.  1:09CV1039** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **U.S. METALS GROUP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |


**CHRISTOPHER A. BOYKO, J.**:

        This matter comes before the Court upon the Report and Recommendation (ECF DKT

# 25) of the Magistrate Judge, recommending the Motion (ECF DKT # 16) of Defendants,

U.S. Metals Group, Jim Lagoria, and Sam Abondo ("U.S. Metals"), to Stay Proceedings and

Compel Arbitration be granted, and the above-captioned case stayed pending arbitration.

Plaintiff, Edwin Phelps ("Phelps"), submitted his Objection to Report and Recommendation

of Magistrate to Compel Arbitration (ECF DKT # 26) on December 17, 2009; and Defendants

filed their Response (ECF DKT # 28) on December 29, 2009.  For the following reasons, the

Court OVERRULES Plaintiff's Objections; ADOPTS the Report and Recommendation; and

STAYS the above-captioned case pending arbitration.

## I. FACTUAL BACKGROUND

Phelps is a resident of Ohio and Defendants are California residents.  On or about June 11, 2008, Phelps received a telephone solicitation from individuals allegedly affiliated with Defendant U.S. Metals Group.  Phelps entered into a contract whereby U.S. Metals agreed to invest in precious metals on his behalf.  Phelps allegedly deposited $35,000.00 with Defendants for the purchase of silver.  On or about June 17, 2008, Phelps alleges he placed an order for 5,100 ounces of silver.  Within days of that transaction, Phelps alleges he received a telephone call from a purported representative of U.S. Metals (identified only as "the Russian"), who urged Phelps to immediately invest in palladium which was rising in value.  On or about July 11, 2008, Phelps deposited an additional $38,000.00 and placed an order with Defendants for 200 ounces of palladium.  Phelps alleges he repeatedly attempted to contact Defendants' representatives by telephone, fax, and letter with concerns about his investment; but he received no response.  He insists he never executed a agreement to purchase or trade on margin.  On July 23, 2008, Phelps received a "Current Account Holdings" statement, showing his account held 5,100 ounces of silver and 200 ounces of palladium.  (ECF DKT #1-6, Exhibit E to original Complaint).  Based upon the current values of silver and palladium, and his deposit of $73,000.00, Phelps believed Defendants were trading, against his wishes, on margin; or never investing for him at all, but converting his money to their own use.  Phelps further alleges Defendants' representative informed him in August of 2008 that his account value had plummeted from $73,000.00 to $3,000.00.

Phelps filed this action on May 6, 2009; and amended his Complaint on November 20, 2009, to allege the following causes of action: breach of oral contract; breach of contract;

fraudulent inducement; common law fraud; sale of unregistered securities in violation of the

Securities Act of 1933, as amended; securities fraud in violation of Section 10b-5 of the

Securities and Exchange Act of 1934; negligent misrepresentation; conversion; unjust

enrichment; sale of unregistered securities in violation of O.R.C. § 1707 [sic]; securities fraud

in violation of O.R.C. § 1707.41; civil conspiracy; declaratory judgment; violation of the

Ohio Consumer Sales Practices Act O.R.C. § 1345.01- § 1345.28; violation of the Home

Solicitation Sales Act O.R.C. § 1345.21- § 1345.28; and violation of O.R.C. § 4728.01-

§ 4728.99, regarding licensing of precious metal dealers.  Defendants have moved to stay the

proceedings and compel arbitration.  (ECF DKT #16).

In relevant part, the contract between U.S. Metals and Phelps provided the following

in the Risk Factors and Disclosure Statement:

Arbitration with Governing Law and Venue

The parties agree that any disputes relating to this Account will be submitted to
binding arbitration. The venue for any such arbitration shall be exclusive in the
State of California and all parties agree that any arbitration award entered shall
be binding and convertible to a State of California judgment subject to the laws
of the State of California and further subject to any modifications thereof
permissible there under. The parties hereby accordingly waive their right to
any
other remedy or to proceed with any court actions and further hereby waive
jurisdiction and venue. US Metals Group (hereafter referred to as "the
Company"), it's [sic] employees and executives, and all other parties employed
by or contracted with the Company, are not to be held legally or otherwise
responsible for any financial loss as of the result of the customer's transactions
through the customer's broker or any other communication with the Company.
This Account and the activities contemplated hereunder shall be governed by
the substantive and procedural laws of Los Angeles County, the State of
California without respect to California conflict of law rules and venue of any
dispute resolution shall likewise be in Los Angeles County, State of California
with respect to California conflict of law rules.

Phelps affixed his signature to the page containing this provision and two other pages

comprising the Risk Factors and Disclosure Statement.  (ECF DKT #1-6, Exhibit E to original

Complaint, incorporated in its entirety in Amended Complaint (ECF DKT #23)).

## II. LAW AND ANALYSIS

### Standard of Review

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636, the District Court is required to

review *de novo* any portion of the Magistrate Judge's Report to which a specific objection is

made.  A party who fails to file an objection waives the right to appeal.  *U.S. v. Walters*, 638

F.2d 947, 950 (6th Cir. 1981).  In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Supreme

Court held: "It does not appear that Congress intended to require district court review of a

magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when

neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

> The District Judge to whom the case was assigned shall make a *de novo*
> determination of those portions of the report or specified proposed findings or
> recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> Magistrate Judge.  The District Judge need conduct a new hearing only in such
> District Judge's discretion or where required by law, and may consider the
> record developed before the Magistrate Judge, making a determination on the
> basis of the record.  The District Judge may also receive further evidence,
> recall witnesses or recommit the matter to the Magistrate Judge with
> instructions.

### The Federal Arbitration Act ("FAA")

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*. provides that an

arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2 (2003).  If the Court determines that an issue brought before it is referable to arbitration under a written arbitration agreement, it shall, on the application of one of the parties, stay the proceedings until arbitration is completed.  9 U.S.C. § 3 (2003). The FAA mandates when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4 (2003).  The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation.  See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  The FAA requires courts to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions.  9 U.S.C. § 4 (2003).  The Court must ascertain whether the parties agreed to arbitrate the dispute at issue.  See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 626 (1985).  A party cannot be required to arbitrate any dispute if the party has not agreed to do so.  *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).  The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement."  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

**Validity of Arbitration Agreement**

If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question.  9 U.S.C. § 4.  "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.  *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997)."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

> The required showing mirrors that required to withstand summary judgment in a civil suit ... we view all facts and inferences drawn therefrom in the light most favorable to [the party challenging the validity of the arbitration agreement], and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists.  (Citations omitted).

*Great Earth*, 288 F.3d at 889.

**Analysis of Phelps' Objections**

**First Amended Complaint**

Phelps is correct to point out the Magistrate Judge's Report and Recommendation was issued on December 3, 2009, while his Amended Complaint was filed on November 20, 2009 and accepted by the Court on December 1, 2009.  It is unlikely the Magistrate Judge had sufficient opportunity to consider the allegations of the amended pleading as distinguished from the original pleading.  However, the District Judge is authorized by Local Rule 72.3(b) to receive additional facts or submissions than were before the Magistrate Judge.

This Court carefully reviewed the Amended Complaint and painstakingly compared the allegations in all sixteen counts to those in the original Complaint.  This Court was unable to discern any addition, deletion or amendment, nor has Phelps identified such, which bears

-6-

upon arbitrability or necessitates reconsideration of the Magistrate Judge's conclusions.

**Application of California Law**

The Risk Factors and Disclosure Statement, executed on each page by Phelps, plainly

states that the "Account and the activities contemplated hereunder shall be governed by the

substantive and procedural laws of Los Angeles County, the State of California."

When the parties to a contract select a forum other than Ohio, the relevant analysis is

found in Restatement of Law 2d (1971) 561, Conflict of Laws, Section 187(as adopted in

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438-39

(1983)).  The law of the  parties' chosen forum will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the
> transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental
> policy of a state which has a materially greater interest than the chosen state in
> the determination of the particular issue and which, under the rule of § 188,
> would be the state of the applicable law in the absence of an effective choice of
> law by the parties.

It is undisputed that California has a substantial relationship to the transaction or the

parties, since Defendants are California residents and the agreements were made both in

California and Ohio through the mail and electronic means, i.e., fax and telephone.

However, Phelps argues the State of Ohio has a greater interest in protecting its

citizens from unconscionable contracts and contracts of adhesion; and guarding its citizens

from foreign parties who may be acting in violation of R.C. §§ 4728.01, *et seq.*, governing

precious metals dealers.  Thus, Phelps insists Ohio law should be applied and the Magistrate

Judge's recommendation should be rejected.

Viewing the arguments, factual allegations, and law in a light most favorable to

Phelps, the Court cannot agree that unconscionability renders the arbitration clause unenforceable.  Phelps fails to explain how California law on unconscionability or on contracts of adhesion is contrary to Ohio law on the same subjects.  Also, Phelps has not shown how the application of California law would contravene fundamental Ohio policy; nor why an arbitrator in California could not adequately analyze R.C. §§ 4728.01, et seq., should that statutory framework be found relevant to this transaction.

### Arbitration Provision is Void Ab Initio

Once again, it is well-settled that "[b]efore a court can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists."  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003).  Moreover, a "contract is void ab initio if it seriously offends law or public policy[.]" *Bassett v. NCAA*, 528 F.3d 426, 438 (6th Cir. 2008).   Phelps alleges the Defendants acted as precious metals dealers in Ohio without a license or registration prescribed under R.C. §§ 4728.01, *et seq*., rendering the contract void.  Phelps asserts if the contract is void, then the arbitration clause is of no effect.

The Supreme Court has instructed, and the Sixth Circuit has further elucidated, that "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole."  *Great Earth*, 288 F.3d at 889, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

Phelps' assertion of the illegality of the contract, based upon Defendants' violation of R.C. §§ 4728.01, *et seq*., goes to irregularities in the formation of the agreement and the validity of the contract as a whole, not the arbitration provision under review here.  "Such

claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration." *Prima Paint*, 388 U.S. at 404; *Great Earth*, 288 F.3d at 892.

Therefore, as the Magistrate Judge noted, "Phelps' assertion that the contract is void *ab initio*, even if true, is insufficient to avoid arbitration." (Report & Recommendation, ECF DKT #25 at 28).

### Public Policy

Phelps also objects to the Magistrate Judge's Recommendation by arguing public policy favors denying arbitration on the licensing issue. Phelps provides a number of colorful analogies describing a virtual invasion of out-of-state, unlicensed persons (e.g., auto mechanics from Minnesota performing dental surgery on Ohio citizens) to support his argument that the Court should decline to enforce arbitration in favor of litigation in Ohio's courts.

As the Supreme Court has instructed, "where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Simon v. Pfizer,* 398 F.3d at 773 n.12 (6th Cir. 2005) (quoting *United Steelworkers v. Mead Corp*., 21 F.3d 128, 131 (6th Cir. 1994)).

Phelps' strenuous public policy contention fails to overcome the presumption of arbitrability here. Within the arbitral forum, a competent arbitrator is fully authorized and sufficiently capable of considering the relevance, weight and application of Ohio's licensing statutes to this matter.

### Intent of Parties

Phelps contends a reasonable trier of fact could find the parties did not intend to arbitrate "issues such as the validity of the arbitration agreement when U.S. Metals failed to register, or supply notice of their status as unregistered precious metals dealers within the State of Ohio."  (Phelps' Objection, ECF DKT #26 at 15).

In this objection, Phelps reformulates his arguments about the alleged violation of R.C. §§ 4728.01, *et seq.*  Whether or not U.S. Metals is unlicensed in Ohio as a precious metals dealer, and whether or not its alleged unregistered status was divulged to Phelps, goes to the formation of the contract, not the arbitration provision specifically.  A "party opposing the petition to compel arbitration must state a well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate."  *Great Earth*, 288 F.3d at 889-90. (emphasis in the original; citations omitted).

As the Court noted previously, the Risk Factors and Disclosure Statement, containing the arbitration provision, was executed by Phelps on each individual page.  He signed and dated the acknowledgment on the final page, acknowledging he read, understood and agreed to all statements and disclosures contained in the document.  The Court is compelled to view this as evidence of Phelps' intent.  Furthermore, if any question remains, "doubts as to the parties' intentions should be resolved in favor of arbitration."  *Great Earth*, 288 F.3d at 889, citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

### III. CONCLUSION

For these reasons, after consideration of the pleadings as recently amended, and upon

application of relevant law, the Court OVERRULES Plaintiff's Objections; ADOPTS the

Report and Recommendation; and STAYS the above-captioned case pending arbitration.  The

parties shall file a joint status report every sixty days, informing the Court of the progress of

the arbitration process.

       **IT IS SO ORDERED.**

       **DATE: March 4, 2010**

                    **S/Christopher A. Boyko**
                    **CHRISTOPHER A. BOYKO**
                    **United States District Judge**